## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 94-DP-00760-SCT

**BOBBY GLEN WILCHER A/K/A BOBBY GLENN WILCHER**

**v.**

**STATE OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/94 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BILL T. MAY |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  MARVIN L. WHITE JR. |
| |       LESLIE STAEHLE LEE |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY (DIRECT APPEAL) |
| DISPOSITION: | AFFIRMED - 3/13/97 |
| MOTION FOR REHEARING FILED: | 4/10/97 |
| MANDATE ISSUED: | 7/3/97 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. This capital murder case is presently before this Court on direct appeal from a 1994 resentencing trial that resulted in Bobby Glenn Wilcher's second death sentence for the 1982 murder and robbery of Velma Odell Noblin, a fifty-two-year-old mother of six children.

¶2. The case arises out of the gruesome double murder and robbery of Velma Odell Noblin and Katie Belle Moore. The evidence reflects that Bobby Glenn Wilcher, age nineteen, met his two female victims at a Scott County bar on the night of March 5, 1982. When the bar closed at midnight, Wilcher persuaded the women to take him home. Under this pretext, he directed them down a deserted service road in the Bienville National Forest -- where he robbed and brutally murdered the

women by stabbing them a total of forty-six times.

¶3. Thereafter, Wilcher was stopped for speeding by the Forest Police Department between 1:00 and 2:00 a.m. He was alone and was driving victim Noblin's car. The victims' purses and one victim's brassiere were on the back seat. Wilcher was covered in blood; he had a bloody knife in his back pocket that had flesh on the blade. Wilcher explained his condition by telling the policeman that he had cut his thumb while skinning a possum. The officer followed Wilcher to the hospital, where Wilcher's wound was cleaned and covered with a band-aid. Another officer was called to the hospital to observe Wilcher, the knife, the car, the purses, and the brassiere.

¶4. The officers left the hospital on an emergency call. Wilcher went home. The next morning, he abandoned Noblin's car at an apartment complex. Wilcher also threw the victims' purses and the brasierre in a ditch. He was arrested later that day. The victims' jewelry was subsequently found in Wilcher's bedroom.

## STATEMENT OF THE CASE

¶5. Wilcher was indicted March 11, 1982, in the Scott County Circuit Court for the capital murders of Velma Odell Noblin and Katie Belle Moore. He was tried separately for each murder, and was convicted and sentenced to death in both cases. In 1984, this Court affirmed both judgments of conviction for capital murder and both sentences of death. *See Wilcher v. State*, 448 So. 2d 927 (Miss. 1984) (as to capital murder of Noblin) (hereinafter *Wilcher I*), *cert denied, Wilcher v. Mississippi*, 469 U.S. 873 (1984); *Wilcher v. State*, 455 So. 2d 727 (Miss. 1984) (as to capital murder of Moore) (hereinafter *Wilcher II*).

¶6. Wilcher's subsequent motions for post-conviction relief in these cases were denied. *Wilcher v. State*, 479 So. 2d 710 (Miss. 1985) (hereinafter *Wilcher III*). Thereafter, Wilcher filed for a writ of habeas corpus from the federal district court; his petition was denied. On appeal, the Fifth Circuit held that the death sentences were improper, because the juries were erroneously given an impermissibly vague "especially heinous, atrocious, or cruel" instruction -- which instruction had previously been found unconstitutional in *Clemons v. Mississippi*, 494 U.S. 738 (1990). *Wilcher v. Hargett*, 978 F. 2d 872 (5th Cir. 1992) (hereinafter *Wilcher IV*), *cert. denied, Wilcher v. Hargett*, 510 U.S. 829 (1993). The cases were remanded to this Court for reconsideration.

¶7. In October, 1993, this Court vacated the death sentences in the cases of both victims and remanded the cases to the Scott County Circuit Court for new sentencing hearings. *See Wilcher v. State*, 635 So. 2d 789 (Miss. 1993) (hereinafter *Wilcher V*). The appeal sub judice arises from Wilcher's resentencing trial for the capital murder of Velma Odell Noblin, which was held in Rankin County in June, 1994, upon Wilcher's motion for change of venue. A jury, once again, sentenced Wilcher to death for Noblin's murder. Wilcher's motion for a new trial, or alternatively, for judgment notwithstanding the verdict (JNOV) was denied. Wilcher appeals, in forma pauperis, and raises the following issues for consideration by this Court:

## I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO MAKE A PRETRIAL RULING ON THE ADMISSIBILITY OF WILCHER'S ALLEGED PRIOR BAD ACTS?

## II. WHETHER THE TRIAL COURT ERRED IN THE ADMISSION OF WILCHER'S

STATEMENTS TO SHERIFF WARREN?

III. WHETHER THE STATEMENT ALLEGEDLY MADE BY WILCHER TO A JOURNALIST SHOULD HAVE BEEN SUPPRESSED?

IV. WHETHER THE MENTION OF PAROLE DURING *VOIR DIRE* SHOULD HAVE REQUIRED AN IMMEDIATE MISTRIAL?

V. WHETHER THE TRIAL COURT ERRED IN FAILING TO STRIKE FOR CAUSE PROPOSED JURORS WHO STATED THAT THEY COULD NOT CONSIDER MITIGATING EVIDENCE?

VI. WHETHER THE TRIAL COURT ERRED IN ADMITTING PSYCHOLOGICAL EXPERT TESTIMONY?

VII. WHETHER THE JURY'S SENTENCING DETERMINATIONS WERE CONTAMINATED BY KNOWLEDGE THAT WILCHER HAD PREVIOUSLY BEEN SENTENCED TO DEATH?

VIII. WHETHER THE TRIAL COURT ERRED BY REFUSING TO ALLOW CROSS-EXAMINATION OF SHERIFF WARREN ON HIS EXTORTION CONVICTION?

IX. WHETHER THE TRIAL COURT ERRED IN EXCLUDING MITIGATING EVIDENCE?

    **A. The Evidence on the Harshness of a Life Sentence.**

    **B. The Testimony of Wilcher's Family Members.**

X. WHETHER THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD CONSIDER WILCHER'S CONVICTION FOR THE MURDER OF THE SECOND VICTIM AS AN AGGRAVATING CIRCUMSTANCE?

XI. WHETHER THE TRIAL COURT ERRED BY REQUIRING THAT JURORS MAKE A UNANIMOUS DECISION?

XII. WHETHER THE TRIAL COURT ERRED BY SUBMITTING THE UNDERLYING FELONIES AS AGGRAVATING CIRCUMSTANCES AND SUBMITTING THE "ROBBERY" AND "KIDNAPPING" CHARGES AS TWO SEPARATE AGGRAVATING FACTORS?

    **A. Failure to Require a Finding of Both Underlying Felonies.**

    **B. The Use of the Underlying Felony as an Aggravator.**

    **C. The Underlying Felony Aggravator and Proportionality.**

XIII. WHETHER THE TRIAL COURT ERRED IN SUBMITTING THE "ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL" AGGRAVATING CIRCUMSTANCE?

## XIV. WHETHER THE PROSECUTORS' CLOSING ARGUMENT CONSTITUTED REVERSIBLE ERROR?

### A. The "Who is the State" Comments.

### B. The "Send a Message" Comment.

### C. The "Mad Dog" Comment.

¶8. This Court finds that the legal issues raised by Wilcher are without merit. For this reason, this Court must also make a determination on the following issue:

## XIV. WHETHER THE DEATH SENTENCE IMPOSED IN THIS CASE WAS PROPORTIONATE?

¶9. Having considered the crime and the defendant, this Court holds that the death sentence imposed in this case was neither disproportionate nor excessive. The judgment of the trial court sentencing Wilcher to death is affirmed.

## ANALYSIS

## I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO MAKE A PRETRIAL RULING ON THE ADMISSIBILITY OF WILCHER'S ALLEGED PRIOR BAD ACTS?

¶**10.** Wilcher first argues that trial court erred by refusing to rule in limine on the admissibility of certain evidence of "prior bad acts," thereby impairing his exercise of his right to testify. The evidence at issue consisted of statements made by Wilcher to journalist Sid Salter and prison records of Wilcher's bad behavior in the penitentiary. This Court finds that Wilcher is procedurally barred from raising this issue because he failed to proffer his testimony. Furthermore, even if this Court were to consider the merits of Wilcher's argument, the trial court did not abuse its discretion by denying Wilcher's motion.

¶11. In support of his contention, Wilcher cites *Settles v. State*, 584 So. 2d 1260, 1264 (Miss. 1991). The defendant in *Settles* had previously been convicted of other crimes. Settles sought and was denied a ruling that those prior convictions could not be introduced for impeachment purposes. Based on that ruling, Settles claimed that he did not take the stand to testify in his own defense. *Settles*, 584 So. 2d at 1262. This Court reiterated its ruling in *McInnis v. State*, 527 So. 2d 84, 87 (Miss. 1988) that "the grant or denial of a hearing to determine in advance the admissibility of a prior criminal conviction for impeachment purposes is discretionary." *Settles*, 584 So. 2d at 1265. Nonetheless, the court also admonished

> the bench and bar that there are sound reasons that dictate a serious consideration of applications for preliminary rulings. We strongly encourage that such rulings be made and that the trial courts defer ruling only in those rare circumstances where the delay is absolutely necessary to a fair presentation of the issue.

> In the instant case, there was an abuse of discretion. The trial court refused to consider the prior convictions in summary fashion stating only that it was not fair that the prosecutor be compelled

to disclose whether he intended to use prior convictions. Settles, of course, was seeking no such disclosure. He sought only a determination whether the law as applied to the facts in his case would permit the use of certain facets of or all of his criminal history. The least to which he was entitled was exclusion of those convictions which are not permitted for impeachment under our rules.

*Id.*

¶12. *Settles* can be distinguished from the case at hand. *Settles*, as do most of the cases on this issue, involved a prior conviction being offered for impeachment purposes. *See also Hansen v. State*, 592 So. 2d 114, 130-131 (Miss. 1991). Wilcher involves prior bad acts, for which he was not convicted. M.R.E. 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶13. However, when those "other crimes, wrongs, or acts" result in a conviction, additional rules of evidence apply. Specifically, M.R.E. 609 details the circumstances under which prior convictions may be used for impeachment purposes.[1] A review of *Settles* and its progeny reflects that, where the Rule 609 guidelines are clear, the trial judge is encouraged to make a pre-trial ruling on the admissibility of a prior conviction for impeachment purposes. *See Settles*, 584 So. 2d at 1265; *Johnson v. State*, 666 So. 2d 499, 502 (Miss. 1995); *Hopkins v. State*, 639 So. 2d 1247, 1254 (Miss. 1993); *Hansen*, 592 So. 2d at 131.

¶14. However, there is no such clear set of guidelines for the admissibility of prior bad acts not resulting in a conviction. Furthermore, there is no such guideline for the introduction of either prior convictions or prior unconvicted bad acts for purposes other than impeachment:

> If [the defendant] had a valid legal objection to being cross-examined about a prior conviction, he was not denied the right to assert it, and presumably have it sustained if correct in his contention. The obviously appropriate time to assert it was if and when the State sought to cross-examine him on the subject. When a trial judge can know in advance of trial the circumstances under which evidence will be sought to be introduced, he can safely make a ruling. He should not be called upon, however, to anticipate which of several circumstances will occur. Evidence inadmissible for one purpose may be relevant and competent for another. And, a trial judge should not be faulted for refusing to rule in advance how he will rule when he does not, indeed cannot, know the context in which the evidence will be offered.

*Thorson v. State*, 653 So. 2d 876, 889 (Miss. 1994) (capital case) (citing *Settles*, 584 So. 2d at 1265) (other citations omitted).

¶15. The trial court has a great deal of discretion in declining to make a blanket ruling in limine on the admissibility of prior bad acts. This is particularly true in the light of Rule 404(b), which allows prior bad acts to be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* M. R. E. 404 (b).

**¶16.** Moreover, even though this Court in *Settles* found that the trial court had abused its discretion by not making an in limine ruling on certain prior convictions, this Court also held that Settles was procedurally barred from raising the issue on appeal:

> This brings us to a consideration of whether Settles has properly preserved the issue. In *Saucier v. State*, 562 So. 2d 1238, 1245 (Miss. 1990), we held that in order to preserve the issue whether a court erred in ruling on a motion to limit use of prior convictions the least that is required of the criminal defendant is that a proffer be made of the testimony that he would have offered but for the ruling. *Id.* at 1245. While, as we note above, the content of defendant's testimony may be of little assistance to the trial court in making a decision on admissibility, the requirement of a proffer serves two purposes. It provides a modicum of assurance that the requested ruling is not purely advisory and, most importantly, it provides a basis for this court's harmless error analysis.
>
> Of course, if a proffer is required in the face of an erroneous ruling, surely no less is required to preserve the issue where no ruling is made. Settles made no such proffer. Under the circumstances we need not reach the question urged upon us by the state, whether, the failure to actually testify is an absolute bar to the question of the availability of prior conviction evidence. Settles' conviction must be affirmed because he failed preserve the issue in the manner we have prescribed in *Saucier*, 562 So. 2d 1238.

*Settles*, 584 So. 2d at 1265. Thus, Wilcher's argument on this point is procedurally barred. *See Hansen*, 592 So. 2d at 131 (applying this procedural bar in a capital murder case).

> At the very least, a defendant wishing to present the point on appeal, absent having taken the witness stand himself, must preserve for the record substantial and detailed evidence of the testimony he would have given so that we may gauge its importance to his defense. . . . [i]f a defendant in fact has nothing of substance to say in his own defense, we are hardly likely to give the time of day to his suggestion that his right of allocution was chilled by the foreknowledge that the prosecution would present his prior conviction.

*Heidelberg v. State*, 584 So. 2d 393, 395 (Miss. 1991).

¶17. Furthermore, even if Wilcher's argument were not procedurally barred, the trial judge did not abuse his discretion by waiting to rule on the admissibility of Wilcher's prior bad acts until the State attempted to introduce them. Indeed, the introduction of these prior bad acts would have been proper if offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* M. R. E. 404(b). Therefore, Wilcher's argument on this issue fails.

## II. WHETHER THE TRIAL COURT ERRED IN THE ADMISSION OF WILCHER'S STATEMENTS TO SHERIFF WARREN?

¶18. Wilcher gave two incriminating statements to the authorities. He now contends that they were inadmissible because they were taken in violation of his Sixth Amendment right to counsel. The standard of review for such claims is well-settled. "Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard,

committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." *Balfour v. State*, 598 So. 2d 731, 742 (Miss. 1992).

¶19. The record reflects that Sheriff Glen Warren served Wilcher with an arrest warrant the evening after the murders. Sheriff Warren and a deputy questioned Wilcher that night in the sheriff's office. Wilcher confessed to killing the women, taking the car, and later abandoning the car. Two days later, Wilcher's father led the authorities to the victims' jewelry, which was hidden in Wilcher's bedroom. Wilcher was questioned again, but he declined to give a statement at that time.

¶20. Three days later, Wilcher requested to meet with the sheriff. Wilcher then told the officers that he was ready to show them the location of the victims' purses and one victim's brassiere. The three men drove to the Good Hope community. Wilcher then led the officers to a ditch, where they found the purses and the brassiere.

¶21. On the trip back to Forest, Wilcher told the officers that he was going to tell them the truth about the murders, that the first statement he gave was not "all true." Upon returning to the sheriff's office, Wilcher made a second statement in which he confessed to robbing and killing the victims. Basically, Wilcher said that he killed Moore and Noblin because they would not give him their money. This statement was given at the same time or shortly after the trial court appointed Wilcher's attorney.

¶22. The record reflects that Wilcher had been advised of his rights and waived his rights on all occasions where he was questioned by the authorities. The testimony also indicates that Wilcher did not ask for an attorney. This Court determined Wilcher's statements to be admissible when this case was considered on direct appeal in 1984. *See Wilcher I*, 448 So. 2d at 933-34. The admissibility of Wilcher's incriminating statements is res adjudicata. *See Jordan v. State*, 518 So. 2d 1186, 1189 (Miss. 1987).

¶23. However, Wilcher argued to the trial court that the 1986 United States Supreme Court decision in *Michigan v. Jackson*, 475 U.S. 625, rendered the statements inadmissible at the 1994 resentencing hearing. The trial court overruled Wilcher's motion to suppress.

¶24. On appeal, Wilcher contends that (pursuant to the decision in *Michigan v. Jackson*) his Sixth Amendment right to counsel was violated when the authorities obtained a statement from him after counsel had been appointed for him. In *Michigan v. Jackson*, the United States Supreme Court held that "once [the Sixth Amendment] right to counsel has attached *and has been invoked*, any subsequent waiver during a police-initiated custodial interview is ineffective." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (emphasis added).

¶25. Indeed, in 1992, the federal court thoroughly considered the application of *Michigan v. Jackson* to Wilcher's case and found that the trial judge properly admitted the inculpatory statements. *See Wilcher IV*, 978 F. 2d 872 (5th Cir. 1992), *cert. denied, Wilcher v. Hargett*, 510 U.S. 829 (1993). The Fifth Circuit's application of the law to the facts in this case is persuasive. That court held:

> A defendant's Sixth Amendment right to counsel attaches upon the initiation of adversary proceedings. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). . .

.Wilcher asserts that even if his waiver was voluntary and knowing, the questioning in this case violated the prophylactic rule of *Michigan v. Jackson*, 475 U.S. at 635, 106 S.Ct. at 1411. The Supreme Court held in Jackson that "if police initiate interrogation after a defendant's assertion at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* The State argues that Wilcher never took any action to invoke his right to counsel and therefore had not triggered the *Jackson* rule.

We recently addressed the effect of appointment of counsel on the rights of a defendant who has never asserted or accepted the counsel. We held that a defendant's Sixth Amendment rights are not violated by questioning in the absence of his attorney unless the defendant has asserted his right to an attorney. *Montoya v. Collins*, 955 F.2d 279 (5th Cir.1992). . . . We held that "for purposes of *Jackson*, an 'assertion' means some kind of positive statement or other action that informs a reasonable person of the defendant's 'desire to deal with the police only through counsel.' " *Id.* at 283. Thus, we concluded that Montoya's interrogation did not violate the rule of *Jackson* because he did not assert a right to counsel and thereby trigger its protection.

Wilcher likewise did not assert a right to counsel in his interrogation by the officers. Under *Montoya* he was not protected by the rule in *Jackson* and voluntarily waived his right to counsel under the Sixth Amendment.

*Wilcher IV*, 978 F. 2d at 876.

¶26. Therefore, because Wilcher did not request an attorney or in any way assert his Sixth Amendment right to counsel, his argument on this point is without merit. Furthermore, the evidence indicates that, upon being given his Fifth Amendment/*Miranda*[2] warnings, Wilcher waived his right to counsel before each inculpatory statement was given. As a general rule, a defendant may waive his Sixth Amendment right to counsel when he waives his Fifth Amendment rights. *Patterson v. Illinois*, 487 U.S. 285, 296 (1988); *Metteteal v. State*, 602 So. 2d 864, 868 (Miss. 1992).

¶27. In addition, at least with regard to the second statement, Wilcher initiated contact with the authorities. The constitutional safeguards discussed above deal only with police-initiated interrogations:

Once the right to counsel has attached, and the accused asserts the right, he is protected from further police-initiated interrogation. *Michigan v. Jackson*, 475 U.S. 625, 634-636, 106 S.Ct. 1404, 1410-1411, 89 L. Ed. 2d 631, 641-642 (1986). Even if the accused has procured an attorney, the accused may still waive the right to have the lawyer present during any police questioning. Nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney. Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will.

*Metteteal*, 602 So. 2d at 868. *See also Houston v. State*, 531 So. 2d 598, 601 (Miss. 1988).

¶28. Therefore, even if the doctrine of res adjudicata did not apply to the admissibility of the

statements, Wilcher's argument is without merit. The trial court applied the correct legal standards, did not commit manifest error, and did not act contrary to the overwhelming weight of the evidence by admitting Wilcher's incriminating statements.

## III. WHETHER THE STATEMENT ALLEGEDLY MADE BY WILCHER TO A JOURNALIST SHOULD HAVE BEEN SUPPRESSED?

¶29. Sid Salter, publisher of the *Scott County Times*, testified that he interviewed Wilcher in October, 1985, and March, 1988. Both interviews occurred at the State Penitentiary at Parchman at Wilcher's request. During the course of those interviews, Wilcher made several damaging statements. For example, Wilcher told Salter that he committed the murders and that he stabbed the victims multiple times because "it felt good." The trial judge denied Wilcher's motion to suppress these statements that Wilcher made to Salter.

¶30. Wilcher now argues that the trial court erred by allowing Salter's testimony to be admitted in evidence: "Because the Salter interview could not have taken place without the substantial assistance and cooperation of the State of Mississippi, through its Department of Corrections, the Salter interview could not take place in the absence of counsel." Wilcher's argument seems to be that, because the Parchman officials had to open the gate in order to comply with *his own request* to be interviewed by a journalist, then the journalist was acting on behalf of the State.

¶31. In support of his argument, Wilcher cites *United States v. Henry*, 447 U.S. 264, 273 (1980). In that case, the government put a paid informant in the cell with the defendant. The United States Supreme Court held that "[b]y intentionally creating a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel, the Government violated [his] Sixth Amendment right to counsel." *Henry*, 447 U.S. at 274; *see also Maine v. Moulton*, 474 U.S. 159 (1985).

¶32. However, the record does not support Wilcher's argument that the State "intentionally created" the interview situation at issue. Indeed, there is no evidence that Salter acted on behalf of the State. Salter went to Parchman at Wilcher's request. The Parchman officials complied with Wilcher's request to allow the interviews. Wilcher signed releases with regard to the interviews. Salter specifically denied that he was acting on behalf of the State. Furthermore, Wilcher had previously confessed to others, and these Salter interviews occurred after Wilcher's direct appeals of this case had been affirmed by this Court. Therefore, the State had no incentive to create a situation in hopes that Wilcher would incriminate himself. For these reasons, this Court finds that Salter was working as a private citizen, a journalist.

¶33. It is rudimentary that statements made to private individuals do not implicate the Sixth Amendment right to counsel. *See United States v. Darden, et al.*, 70 F. 3d 1507, 1541 (8th Cir. 1995). "Absent a law enforcement connection, the Sixth Amendment claim fails." *McClain v. Calderon*, 1995 WL 769176 (C.D. Cal.), slip op. at *21 (citing *Kuhlmann v. Wilson*, 477 U.S. 436 (1986))

¶34. "As long as the police do nothing to direct or control or involve themselves in the questioning of a person in custody by a private citizen, such questioning does not violate the [Sixth Amendment]." *United States v. Surridge*, 687 F. 2d 250, 255 (1982). Because there is no evidence of government

control, involvement, or direction in the Salter interviews, Wilcher's arguments on this point are without merit.

## IV. WHETHER THE MENTION OF PAROLE DURING *VOIR DIRE* SHOULD HAVE REQUIRED AN IMMEDIATE MISTRIAL?

¶35. Wilcher next contends that the possibility of parole was improperly mentioned during the voir dire. He bases this argument on the following interaction with the venire during the defense attorney's voir dire examination, in which a potential juror asked about the possibility of parole:

> [BY DEFENSE COUNSEL]: Do any of you have opinions right now, based on previous things that you have read, previous things that you have heard, or however you might have acquired that opinion that life imprisonment is just a not serious sentence? Does anybody have that opinion? Raise your hand if you do, please . . . .

> Q. You are number . . . [16].

> A. The question -- are we talking life without parole or life?

> Q. Well, sir, the only sentence that can be returned would be life imprisonment or the death penalty.

> A. Yes, sir. That could mean parole?

> BY [DEFENSE COUNSEL]: Your Honor, I don't know how to respond to that question.

> BY THE COURT: I am going to let you draw on your own experiences in interpreting whether life imprisonment means life to serve or life with or without parole.

¶36. After the voir dire was concluded and the challenges for cause were heard, the defense moved for a mistrial. The motion was denied. Wilcher argues that the motion for a mistrial should have been granted. He contends that the jury pool was tainted because of the mention of parole.

¶37. Under the sentencing statute in effect at that time, jurors were forbidden to consider the possibility of parole[(3)] -- except in habitual offender cases (where a sentence of life imprisonment would automatically be without parole). *Blue v. State*, 674 So. 2d 1184, 1195-96 (Miss. 1996); *Mackbee v. State*, 575 So. 2d 16, 40-41 (Miss. 1990). The seminal case on this issue is *Walter Williams, Jr. v. State*, 445 So. 2d 798, 812-14 (Miss. 1984). In *Williams*, this Court held that:

> A jury should have no concern with the quantum of punishment because it subverts a proper determination of the sentencing issue.

> Reference to the possibility of parole should the defendant not be sentenced to die are wholly out of place at the sentencing phase of a capital murder trial for two additional reasons.

> First, such references inevitably have the effect of inviting the jury to second guess the Legislature. The Legislature has declared that persons sentenced to life imprisonment may under certain circumstances become eligible for parole. It is no more proper for the jury to concern itself with the wisdom of that legislative determination that it is for the jury to consider

the Legislature's judgment that death in the gas chamber be an authorized punishment for capital murder.

Second, parole is not automatic. No person sentenced to life imprisonment has any "right" to parole. Allowing argument or testimony regarding the possibility of the defendant some day being paroled is in effect inviting the jury to speculate how *ten years in the future* the parole board may exercise its legislatively granted discretionary authority. This would introduce into the sentencing proceedings an "arbitrary factor" proscribed by [Miss. Code Ann.] section 99-19-105 (3)(a).

*Williams*, 445 So. 2d at 813 (citations omitted). *See also Jessie Derrell Williams v. State*, 544 So. 2d 782, 798 (Miss. 1987); *Cabello v. State*, 471 So. 2d 332, 346 (Miss. 1985).

¶38. Most of the cases dealing with this issue have arisen in the context of closing arguments, jury instructions, or witness's testimony. *See, e.g., Griffin v. State*, 557 So. 2d 542, 553 (Miss. 1990); *Jessie Derrell Williams v. State*, 544 So. 2d at 798; *Walter Williams, Jr. v. State*, 445 So. 2d at 812-14. However, the case at hand involves the handling of questions from the venire during voir dire. This Court finds that the case sub judice is factually distinguishable from *Williams* and its progeny; for this reason, the analysis expressed in those cases will not be extended to apply to this factual situation. *See Williams*, 445 So. 2d at 813; *Griffin*, 557 So. 2d at 553; *Jessie Derrell Williams*, 544 So. 2d 798; *Cabello*, 471 So. 2d at 346.

¶39. The trial judge followed this Court's instructions to not speculate on parole. He did not tell the jurors that parole was a possibility. Moreover, at the close of the presentation of evidence, the trial judge properly instructed the jury regarding the options of life and death. The trial judge's actions in this case did not constitute reversible error; therefore, Wilcher's claim on this point is without merit.

## V. WHETHER THE TRIAL COURT ERRED IN FAILING TO STRIKE FOR CAUSE PROPOSED JURORS WHO STATED THAT THEY COULD NOT CONSIDER MITIGATING EVIDENCE?

¶40. Wilcher next contends that the trial judge erred in overruling defense motions to strike for cause five jurors who stated in voir dire that they could not consider mitigation evidence. The State argues that Wilcher's claim regarding the denial of motions to strike for cause is procedurally barred because Wilcher only exercised ten of his twelve peremptory challenges. Indeed, a prerequisite to the presentation of a claim of error based on the denial of a challenge for cause is a showing that the defendant exhausted his peremptory challenges and that the incompetent juror was forced to sit on the jury by the trial court's erroneous ruling. *Russell v. State*, 670 So. 2d 816, 825-26 (Miss. 1995) (citing *Metteal v. State*, 602 So. 2d 864 (Miss. 1992)).

This Court has held on more than one occasion that when a trial court fails to sustain a challenge for cause by the defense, it must be shown that the defense had exhausted all of its peremptory challenges before the trial court's refusal to allow the challenge for cause . . .

The appellant has the power to cure substantially any error so long as he has remaining unused peremptory challenges. We would put the integrity of the trial process at risk were we to allow a litigant to refrain from using his peremptory challenges and, suffering an adverse verdict at

trial, secure reversal on appeal on grounds that the Circuit Court did not do what appellant wholly had power to do.

*Chase v. State*, 645 So. 2d 829, 845-46 (Miss. 1994) (citations omitted). Because Wilcher did not exhaust all his peremptory challenges, and because none of the veniremen at issue actually served on the jury, Wilcher's argument on this point is procedurally barred and without merit. *See Russell*, 670 So. 2d at 825.

## VI. WHETHER THE TRIAL COURT ERRED IN ADMITTING PSYCHOLOGICAL EXPERT TESTIMONY?

¶41. Wilcher next argues that the trial judge erred in admitting the testimony of Dr. Charlton Stanley, a psychologist, and Dr. Donald Guild, a psychiatrist, during the State's rebuttal. The doctors' testimony was used to rebut Wilcher's presentation of mitigating evidence tending to show that Wilcher was extremely emotionally disturbed at the time of the murders.

¶42. Wilcher contends that, on May 6, 1994, the State obtained an ex parte order from the trial judge granting the State's motion for a psychiatric and psychological examination of Wilcher. Wilcher claims that he did not receive notice regarding this motion or the court's order granting the motion. On June 1, 1994, at the first motions hearing in this case, the trial judge heard the defense's motion for psychiatric assistance. Wilcher claims that this was the first time he or his counsel received notice that the State had also requested a psychiatric evaluation.

¶43. The defense attorneys reviewed the order granting the State's motion for a psychiatric evaluation, which instructed the doctors to perform an examination to determine Wilcher's ability to stand trial and assist his attorneys in his own defense, as well as Wilcher's ability to know the difference between right and wrong and understand the nature of his actions at the time of the offense. The defense attorneys did not object to this type examination, and, therefore, they did not attend the doctors' interview of Wilcher.

¶44. However, one of the attorneys visited Wilcher in jail on two occasions prior to the interview. The attorney told Wilcher to cooperate with the evaluation, but testified that he would not have done so if he had known what the purpose of the psychiatric evaluation was other than that set forth in the court order -- or, in the alternative, one of the defense attorneys would have accompanied Wilcher to the evaluation.

¶45. Dr. Charlton Stanley and Dr. Donald Guild interviewed Wilcher June 3, 1994. Dr. Guild advised Wilcher that anything said in the interview could be used against him at the sentencing phase of the trial. Dr. Guild then asked if Wilcher wanted to telephone his attorneys, but Dr. Guild could not remember whether Wilcher called them. According to Dr. Guild, Wilcher (upon advice of counsel) declined to answer questions in three to five areas. Specifically, Wilcher declined to speak about his exact actions at the time of the offense and his statement to the police. Both doctors testified that they treated Wilcher in the same manner as they would have treated any capital defendant in Wilcher's position.

¶46. After a lengthy hearing, the trial judge ruled that the doctors could testify. Dr. Stanley opined that Wilcher was not under the influence of any kind of extreme mental or emotional disturbance at

the time of the murders: "[Wilcher] was capable of doing whatever he wanted to do, and if he so chose, to conform his actions to the requirements of the law." Dr. Stanley further stated that Wilcher "certainly ha[d] the elements of the antisocial personality disorder" -- known by laymen as psychopathic, criminal personality, morally insane, or sociopathic. The battery of tests given to Wilcher indicated that Wilcher had "unusually good capacity to control."

¶47. Similarly, Dr. Guild testified that he did not think Wilcher was under extreme emotional duress at the time of the murders. Dr. Guild thought Wilcher knew what he was doing and chose to commit the murders.

¶48. On appeal, Wilcher argues that the admission of the doctors' testimony was error. Specifically, he argues that the evidence was based upon an examination that was conducted in violation of his Sixth Amendment right to counsel.

¶49. Wilcher has been unable to demonstrate that any of the doctors' testimony was based on examination beyond the scope of the court order. Furthermore, the doctors' testimony was used to rebut Wilcher's use of medical evidence to demonstrate mitigating factors. Wilcher's attorneys knew of the examination and one of the attorneys had met with Wilcher twice beforehand to prepare him. Although the attorney testified that he had told Wilcher to cooperate with the interview, there is evidence that the attorney advised Wilcher not to discuss some topics. Indeed, Wilcher declined to answer the questions in three to five areas based on the advice of counsel.

¶50. Furthermore, the doctors told Wilcher that anything he said could be used against him during the sentencing phase. The doctors offered to allow Wilcher to call his attorneys. Thus, to the extent that Wilcher answered the doctors' questions, he did so with full knowledge of his rights.

¶51. The United States Supreme Court has "explicitly declined to hold that a defendant who has obtained counsel cannot himself waive his right to counsel." *Michigan v. Harvey*, 494 U.S. 344, 352 (1990) (citing *Estelle*, 451 U. S. 454, 471-472, n. 16 (1981)). "To hold that a defendant is inherently incapable of relinquishing his right to counsel once it is invoked would be 'to imprison a man in his privileges and call it the Constitution.' This we decline to do." *Michigan v. Harvey*, 494 U.S. at 353 (quoting *Adams v. United States ex re. McCann*, 317 U. S. 269, 280 (1942)).

¶52. Thus, there is no indication that the doctors's testimony resulted from an examination that went beyond the scope of the trial court's order. Defense counsel was aware of the psychological examination and prepared Wilcher for the interview. The doctors warned Wilcher of his rights and, Wilcher exercised those rights by refusing to answer some of the doctors' questions during the examination. For these reasons, Wilcher's argument (that the doctors' rebuttal testimony was based on evidence obtained in violation of the Sixth Amendment) fails.

## VII. WHETHER THE JURY'S SENTENCING DETERMINATIONS WERE CONTAMINATED BY KNOWLEDGE THAT WILCHER HAD PREVIOUSLY BEEN SENTENCED TO DEATH?

¶53. Wilcher next contends that the trial judge should have declared a mistrial because the jury was told that he had previously been sentenced to death for this crime. Wilcher bases his argument on the following exchange, which occurred during the State's questioning of journalist Sid Salter:

Q. I want to direct your attention to the latter part of October of 1985, and ask whether or not you had occasion to conduct an interview with the Defendant, Bobby Wilcher?

A. I did.

Q. And, where did that take place, please?

A. In the maximum security unit at the Mississippi State Penitentiary at Parchman, what is commonly known as death --

Q. And --

A. -- row.

¶54. Out of the jury's presence, the defense moved for a mistrial based on Salter's comment. The trial judge offered to instruct the jury to disregard the comment, but the offer was declined. The trial judge then denied Wilcher's motion for a mistrial. Wilcher now argues that the jury was tainted by their knowledge that he had previously been sentenced to death.

¶55. In support of his argument, Wilcher cites *West v. State*, 463 So. 2d 1048, 1052-53 (Miss. 1985). However, *West* can be distinguished from the case at hand. In *West*, the defendant's two prior convictions from another state were introduced into evidence. The portions of the judgments dealing with punishment had been "scratched through" by the trial judge; however, upon close examination, one could read that the defendant had been sentenced to death in both cases. This Court held that the portion of the judgments dealing with the death sentence should have been redacted in a manner that the jury could not have read. "The reason is that if the jury knows that the appellant is already under a sentence of death it would tend to relieve them of their separate responsibility to make the determination." *West*, 463 So. 2d at 1052-53.

¶56. In the case at hand, the jury was not given a copy of the previous judgments or told that Wilcher had previously been sentenced to death. The jury was told that Sid Salter interviewed Wilcher at Parchman's maximum security unit, commonly referred to as "death row." Salter's comment did not tell the jury that Wilcher was "already under a sentence of death." *See West*, 463 So. 2d at 1052-53.

¶57. The jury was, however, aware that Wilcher had been convicted of two capital murders. It is logical that criminals of this nature would be confined in a maximum security area -- regardless of whether they were awaiting execution.[4] Moreover, the jury was also aware that they were responsible for determining whether Wilcher received the death penalty for killing Noblin. For these reasons, Salter's comment did not relieve the jury of its "separate responsibility to make the determination." *See West*, 463 So. 2d at 1052-53. Wilcher's argument to the contrary fails. *See Romano v. Oklahoma*, 512 U.S. 1 (1994).

## VIII. WHETHER THE TRIAL COURT ERRED BY REFUSING TO ALLOW CROSS-EXAMINATION OF SHERIFF WARREN ON HIS EXTORTION CONVICTION?

¶**58.** Sheriff Glen Warren was one of the officers who took Wilcher's statements during the investigation of these crimes. Sheriff Warren testified at the 1982 guilt phase of this trial. In 1989, Sheriff Warren was convicted of extortion; he died thereafter. The trial judge allowed the sheriff's

prior (1982) testimony to be read in the 1994 resentencing trial sub judice.

¶59. After the testimony was read, the defense sought to introduce evidence of the sheriff's 1989 extortion conviction for the purpose of impeachment. The trial judge did not allow the 1989 extortion conviction to be admitted in evidence.

¶**60.** On appeal, Wilcher argues that the trial court erred by excluding the sheriff's extortion conviction. This Court finds that the admission of the sheriff's conviction was within the trial court's discretion under M.R.E. 609 (a) (1) and the trial court did not abuse that discretion by excluding the conviction.

¶61. Clearly, the reading of Sheriff Warren's prior testimony was admissible under M.R.E. 804, which allows for the admission of former testimony for an unavailable declarant under the following circumstances:

> **(a) Definition of Unavailability.** "Unavailability of a witness" includes situations in which the declarant:
>
> * * *
>
> (4) Is unable to be present or to testify at the hearing because of death
>
> * * *
>
> **(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) *Former Testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

¶62. When hearsay testimony is admitted, M. R. E. 806 provides that "the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness." M. R. E. 806. "Rule 806 has been read to allow impeachment of hearsay declarant's [sic] by the use of their previous convictions pursuant to Rule 609 of the Rules of Evidence." *Turner v. State*, 573 So. 2d 1335, 1339 (Miss. 1990) (citing *United States v. Newman*, 849 F. 2d 156, 161-63 (5th Cir. 1988)).

¶63. M.R.E. 609 provides for the use of prior convictions for impeachment purposes:

> **(a) General Rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2)

involved dishonesty or false statement, regardless of the punishment.

¶64. Sheriff Warren was convicted of extortion under the Hobbs Act, which is punishable by up to twenty years in prison. *See* 18 U.S.C.A. § 1951. Therefore, applying M. R.E. 609(a)(1), the admission of Sheriff Warren's extortion conviction was within the trial judge's discretion, depending on whether he found that the probative value of the conviction outweighed the prejudicial effect of its admission.

¶65. The trial judge stated that the conviction had no probative value because it occurred seven years after the sheriff's original testimony. In analyzing the probative value of the 1989 conviction, it is important to consider the unique way this evidence was presented to the jury. The trial judge properly considered the fact that the testimony given at the 1994 trial was given by someone who had not been convicted of a crime at the time he originally made the statements at issue. This would tend to decrease the probative value of the sheriff's 1989 extortion conviction. Furthermore, Wilcher has not demonstrated anything about the sheriff's life that would have influenced the investigation of the case at hand. Therefore, the trial judge did not abuse his discretion in excluding the conviction. *See also Turner v. State*, 573 So. 2d at 1340. Wilcher's argument to the contrary is without merit.

## IX. WHETHER THE TRIAL COURT ERRED IN EXCLUDING MITIGATING EVIDENCE?

**¶66.** Wilcher next argues that the trial court erred by excluding: a) photographs of Parchman and the testimony of a former prison superintendent to demonstrate the harshness of a life sentence, and b) testimony of Wilcher's family on whether they wished for Wilcher's life to be spared. Wilcher contends that the exclusion of this mitigating evidence violated the Eighth Amendment, which requires that a sentencing jury be allowed to consider all mitigating evidence. Where the sentencer is not permitted to consider all mitigating evidence, there is a risk of "erroneous imposition of the death sentence" and the case will be remanded for resentencing. *Mills v. Maryland*, 486 U. S. 367, 375 (1988) (quoting *Eddings v. Oklahoma*, 455 U. S. 104, 117 (1982)).

¶67. The line of cases cited by Wilcher provides that a sentencer may not be "precluded from considering, as a mitigating factor, any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (citing *Lockett v. Ohio*, 438 586, 604 (1978) (plurality)). The defendant is entitled to "individualized consideration" of his character, his record and his crime. *See Minnick v. State*, 551 So. 2d 77, 96 (Miss. 1989), *overruled on other grounds*, *Willie v. State*, 585 So.2d 660, 681 (Miss.1991).

¶68. The State argues that the evidence excluded by the trial court was not relevant to mitigation, because the evidence did not pertain to Wilcher's character or record or the circumstances of the offense. Indeed, the rule expressed in *Eddings* "does not limit the trial court's power to exclude from the sentencing phase as irrelevant, evidence not bearing on the defendant's character or prior record, or the circumstances of the offense." *Cole v. State*, 525 So. 2d 365, 371 (Miss. 1987). "[I]t is clear that the evidence must be relevant to one or more of those factors." *Minnick*, 551 So. 2d at 96.

### A. The Evidence on the Harshness of a Life Sentence.

¶69. Wilcher contends that the trial court erred in excluding evidence regarding the harshness of a life sentence. Specifically, Wilcher offered pictures of Parchman and testimony from a former prison superintendent. The harshness of a life sentence in Parchman in no way relates to Wilcher's character, his record, or the circumstances of the crime. Therefore, it was properly excluded. *See Minnick*, 551 So. 2d at 96; *Cole*, 525 So. 2d at 371. *See also Hansen v. State*, 592 So. 2d 114, 147 (Miss. 1991) (no reversible error where trial judge excluded opinion testimony on defendant's adaptability to prison life);*Lockett v. State*, 517 So. 2d 1317, 1334 (Miss. 1987) (no reversible error where prosecutor commented in closing arguments on mercifulness of lethal injection and defendant was not allowed to counter with evidence of "mental and physical agonies" of life on death row).

### B. The Testimony of Wilcher's Family Members.

¶70. Wilcher also argues that the trial was fundamentally unfair because the trial judge allowed the family of the victim, but not that of the defendant, to give their subjective impressions about the effect of the crime and the alternatives for punishment on them.

¶71. Victim Noblin's daughter, Nell Boykin, testified that Noblin was survived by six children, five grandchildren, three siblings, and both parents. Boykin also testified that the murder had a "terrible" effect on her family, particularly on victim Noblin's mother.

¶72. Wilcher's mother and his former maternal aunt by marriage testified about their relationship with and feelings of love for Wilcher. Neither witness was allowed to ask the jury to spare Wilcher's life. Wilcher now argues that the trial was fundamentally unfair because the victim's family was allowed to testify about the effect of the murder, but his family was not allowed to ask the jury to spare his life.

¶73. Victim impact evidence, if relevant, is admissible in the sentencing stage. *Davis v. State*, 684 So. 2d 643, 661 (Miss. 1996) (citing *Payne v. Tennessee*, 501 U.S. 808 (1991); *Jenkins v. State*, 607 So. 2d 1171, 1183 (Miss. 1992)). This Court has held that evidence about the characteristics of the victim is relevant to the crime charged: "The evidence offered was proper and necessary to a development of the case and true characteristics of the victim and could not serve in any way to incite the jury." *Jenkins*, 607 So. 2d at 1183 (evidence that victim was a mother, that she was a wife of four years, that she was shy and did not like to wear dresses because they exposed her legs was relevant). Therefore, the evidence about victim Noblin's family was properly admitted. Furthermore, the United States Supreme Court has acknowledged that a State "may legitimately conclude that evidence about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Payne*, 501 U. S. at 827. In this case, Bobby Glen Wilcher killed Velma Odell Noblin by stabbing her thirty-one times. The jury was entitled to know exactly who Velma Odell Noblin was and what impact her death had. This information was relevant to the circumstances of the crime. Therefore, the admission of the victim's family's testimony was proper.

¶74. Furthermore, the trial court did not err in excluding testimony from Wilcher's family that they wished for his life to be spared. This Court has specifically held that such testimony is not relevant to the defendant's character, record, or the circumstances of the offense and that the exclusion of such evidence is proper. *Simon v. State*, No. 91-DP-00353-SCT (Miss. Feb. 9, 1995) (citing *Turner v. State*, 573 So. 2d 657, 667 (Miss. 1990)). Thus, Wilcher's argument on this point is without merit.

**X. WHETHER THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD CONSIDER WILCHER'S CONVICTION FOR THE MURDER OF THE SECOND VICTIM AS AN AGGRAVATING CIRCUMSTANCE?**

¶**75.** The conviction of murder of the second victim, Katie Belle Moore, was offered as an aggravating circumstance. Specifically, the jury was instructed to consider "whether the Defendant was previously convicted of a felony involving the use or threat of violence to the person". Wilcher contends that the jury should not have been instructed to consider his conviction for Moore's murder as an aggravating circumstance.

¶76. Wilcher argues that, by having his conviction in the capital murder of Moore considered as an aggravating circumstance, the jury was improperly required to weigh the same facts twice against the mitigating evidence, in violation of the double jeopardy clause of the Fifth Amendment. Wilcher correctly states that a capital murder defendant cannot be convicted of both capital murder and the underlying felony; the reason being that the defendant cannot be twice prosecuted for the same actions. *See Meeks v. State*, 604 So. 2d 748, 753 (Miss. 1992). By analogy, Wilcher argues that the "same elements" or "*Blockburger*" test precludes the introduction of his conviction of the capital murder conviction of the second victim as an aggravator at the sentencing hearing on the first murder victim. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

¶77. Wilcher's analogy does not hold true. In this case, the court is not faced with one action for which Wilcher could be prosecuted on either the underlying crime or the capital murder. Rather, there are actually two murder victims -- the product of two separate criminal actions by Wilcher. Even though the same facts surround the murder of each victim, there are undeniably two victims, and two counts of capital murder arising from Wilcher's actions. Therefore, the "same elements" test does not apply.

¶78. Furthermore, as the Fifth Circuit has observed:

> [C]onsideration of other crimes at sentencing does not implicate the Double Jeopardy Clause because the defendant is not actually being punished for the crimes so considered. Rather, the other crimes aggravate his guilt of, and justify heavier punishment for, the specific crime for which defendant has just been convicted. *See United States v. Bowdach*, 561 F.2d 1160, 1175 (5th Cir.1977) (rejecting virtually identical double jeopardy argument).

*Sekou v. Blackburn*, 796 F. 2d 108, 112 (5th Cir. 1986). Wilcher's argument to the contrary is without merit.

¶79. Wilcher next argues that, at the original (1982) sentencing trial in this case, his conviction for the capital murder of Moore was not yet final. The only reason his conviction was final at the time of the second (1994) sentencing hearing was because the original death sentence was reversed and the case was remanded for resentencing. He argues that "[s]urely the State should not be granted the benefit of its own prior errors."

¶80. Wilcher's conviction of guilt in both cases has been repeatedly upheld by every court that has considered the matter. Therefore, Wilcher's argument that his conviction for the murder of Katie Belle Moore is specious. *See Wilcher I*, 448 So. 2d 927 (Miss. 1984) (as to capital murder of

Noblin), *cert denied, **Wilcher v. Mississippi***, 469 U.S. 873 (1984); ***Wilcher II***, 455 So. 2d 727 (Miss. 1984) (as to capital murder of Moore); ***Wilcher III***, 479 So. 2d 710 (Miss. 1985) (as to consolidated motions for post-conviction relief); ***Wilcher IV***, 978 F. 2d 872 (5th Cir. 1992) (as to federal habeas corpus action), *cert. denied, **Wilcher v. Hargett***, 510 U.S. 829 (1993); ***Wilcher IV***, 635 So. 2d 789 (Miss. 1993) (as to remand for resentencing).

¶81. Wilcher also argues that the trial judge should have granted instruction D-4, which provided as follows:

> You are allowed to consider, as an aggravating circumstance in this case, whether "the defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." The state has offered the conviction of Bobby Wilcher for the capital murder of Katie Belle Moore as its evidence to support this aggravating circumstance.

> The Court instructs the jury that the use of this aggravating circumstance does not allow you to punish Bobby Wilcher for any crime other that [sic] the killing of Velma Odell Noblin. Indeed, the punishment you assess for the capital murder of Velma Odell Noblin will be served in addition to his punishment for the capital murder of Katie Belle Moore.

¶82. The trial judge refused the instruction, but indicated that he would have given it if the last sentence were redacted. Defense counsel refused to amend the proposed instruction.

¶83. Clearly, the instruction would have been granted, but for the last sentence: "Indeed, the punishment you assess for the capital murder of Velma Odell Noblin will be served in addition to his punishment for the capital murder of Katie Moore." An analysis of this sentence indicates that it asserts as fact an entirely speculative matter. "This Court has repeatedly condemned confusing and misleading instructions." ***Sudduth v. State***, 562 So. 2d 67, 72 (Miss. 1990). Therefore, the trial judge properly refused to give the proposed instruction. Wilcher's argument to the contrary is without merit.

## XI. WHETHER THE TRIAL COURT ERRED BY REQUIRING THAT JURORS MAKE A UNANIMOUS DECISION?

¶**84.** Instruction S-5 was given over defense objection, and provided as follows: "The Court instructs the Jury that all twelve jurors must agree on the verdict before the verdict can be returned into Court." Wilcher asserts that giving this instruction was reversible error because it failed to clarify that if, within a reasonable time, the jury failed to agree unanimously it must cease deliberations and report its findings to the Court.

¶85. Miss. Code Ann. §99-19-103 (Supp. 1994) provides that "[i]f the jury cannot, within a reasonable time, agree as to punishment, the judge shall dismiss the jury and impose a sentence of imprisonment of life." The statute does not (as Wilcher contends) allow the jury to determine what constitutes a "reasonable time" for deliberations and report its findings to the court.

¶86. Furthermore, jury instructions "are not to be read unto themselves, but with the jury charge as a whole." ***Carr v. State***, 655 So. 2d 824, 848 (Miss. 1995); ***Donnelly v. DeChristoforo***, 416 U. S. 637,

645 (1974). Instruction S-1A makes clear the options the jury had in returning to the courtroom:

(1) . . .we . . . find unanimously that the Defendant should suffer death.

* * *

(2) We, the Jury, find that the Defendant should be sentenced to life imprisonment. [or]

* * *

(3) We, the Jury are unable to agree unanimously on punishment.

¶87. Thus, when read as a whole, the jury instructions properly informed the jury that they could return to the courtroom and report that they were unable to agree unanimously on punishment. Therefore, Wilcher's argument is without merit.

¶88. In addition, Wilcher alleges that the "error" in granting S-5 was compounded by the fact that the trial judge refused to give proposed defense instruction D-12, which would have instructed the jury as follows:

The Court instructs the jury that if you cannot, within a reasonable time, agree as to punishment, you must cease deliberations immediately and return the following verdict:

"We, the Jury, cannot agree as to punishment."

This verdict should be written on a separate sheet of paper. In that event, the Court will dismiss the Jury and sentence the Defendant in the manner provided by law.

¶89. As stated earlier, there is no authority for allowing the jury to determine what constitutes a "reasonable time" for deliberations. Moreover, even if the jury had never been instructed on what would happen if they could not agree, there would have been no error. In *Stringer v. State*, this Court held that the trial judge did not err by failing to inform the jury that, "if they were unable to agree within a reasonable time on the punishment to be imposed, [the defendant] would be sentenced to life imprisonment." *Stringer*, 500 So. 2d 928, 945 (Miss. 1986).

The [defendant's] argument creates an illusion of prejudice, which has no logical basis. If the jurors were unable to unanimously find that the aggravating circumstances were sufficient to impose the death penalty and that there were insufficient mitigating circumstances to outweigh the aggravating circumstances, then they could not return a death sentence. Further, in the event they could not unanimously agree after a reasonable period of deliberation, it would be the trial judge's duty under Miss. Code Ann. § 99-19-103 to dismiss the jury and impose a sentence of life imprisonment on the jury.

*Id.* (quoting *King v. State*, 421 So. 2d 1009, 1018 (Miss. 1982)).

¶90. In addition, "[A]n instructional error will not warrant reversal if the jury was fully and fairly instructed by other instructions." *Collins v. State*, 594 So. 2d 29, 35 (Miss. 1992); *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991).

A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991) (citations omitted). To the extent proposed instruction D-12 would have instructed the jury on valid legal concepts, the jury was "fully and fairly instructed" on those concepts in S-1A and S-5. Therefore, Wilcher's arguments on this point are without merit.

## XII. WHETHER THE TRIAL COURT ERRED BY SUBMITTING THE UNDERLYING FELONIES AS AGGRAVATING CIRCUMSTANCES AND SUBMITTING THE "ROBBERY" AND "KIDNAPPING" CHARGES AS TWO SEPARATE AGGRAVATING FACTORS?

¶91. Instruction S-1A was given over defense objections. With regard to aggravating factors, Instruction S-1A provided as follows:

Consider only the following elements of aggravation in determining whether the death penalty should be imposed:

(1) whether the Defendant was previously convicted of a felony involving the use or threat of violence to the person;

(2) whether the capital offense was committed while the Defendant was engaged in the commission of or an attempt to commit the crime of robbery;

(3) whether the capital offense was committed while the Defendant was engaged in the commission of or an attempt to commit the crime of kidnapping

(4) whether the capital offense was especially heinous, atrocious, or cruel.

You must unanimously find, beyond a reasonable doubt, that one or more of the preceding aggravating circumstances exists in this case to return the death penalty. If none of these aggravating circumstances are found to exist, the death penalty may not be imposed . . .

¶92. Wilcher argues that this instruction was flawed in three ways:

### A. Failure to Require a Finding of Both Underlying Felonies.

¶93. Wilcher contends that the trial court erred by instructing the jury that it could find either underlying felony (robbery or kidnapping). The jury found beyond a reasonable doubt that the murder was committed during the course of a robbery, but did not find that the murder was committed during the course of a kidnapping. Wilcher bases his argument that the State had to prove both underlying felonies on the indictment, which charged that he:

did willfully, unlawfully, feloniously, without the authority of law, and of his malice aforethought, kill and murder Velma Odell Noblin, a human being, while he, the said Bobby

Glen Wilcher, was engaged then and there in the commission of the crime of robbery or an attempt to commit the crime of robbery of the said Velma Odell Noblin, and while he, the said Bobby Glen Wilcher, was engaged then and there in the commission of the crime of kidnapping of Kattie [sic] Belle Moore and the said Velma Odell Noblin, human beings, contrary to and in violation of Mississippi Code of 1972 Annotated, Section 97-3-19 (2) (e), as amended.

¶94. Wilcher contends that, because the indictment charged him with murder during the course of kidnapping and robbery, the State was required to prove that the offense was committed in furtherance of both underlying felonies. In support of this argument, he cites *Fisher v. State*, 481 So. 2d 203 (Miss. 1985). In *Fisher*, the State undertook to prove two underlying felonies: rape and robbery. *Fisher* is distinguishable from the case at hand because the *Fisher* jury (at the State's request) was instructed that it had to find both aggravators beyond a reasonable doubt. Therefore, for purposes of review, this Court had to determine that the evidence supported both underlying felonies -- in order to determine that an underlying felony had been proven. *Fisher v. State*, 481 So. 2d 203, 212-214 (Miss. 1985) ("Here, for some reasons not apparent, the State took on the burden of proving two underlying felonies.").

¶95. In the case sub judice, the jury was given the option of finding either that the murder occurred during the course of a robbery or a kidnapping. They found beyond a reasonable doubt that the murder was committed during the course of a robbery. This is supported by Wilcher's own statements to the police and Sid Salter and by the fact that he took the victims' purses, jewelry, and car. This is sufficient to meet the statutory definition of capital murder. *See* Miss. Code Ann. § 97-3-19 (defining capital murder as murder by a person engaged in the commission or the attempt to commit robbery or several other felonies). *See also Fisher*, 481 So. 2d at 212. Wilcher's argument, therefore, is without merit.

### B. The Use of the Underlying Felony as an Aggravator.

¶96. Wilcher also argues that the use of the underlying felony as an aggravating circumstance violates the Eighth Amendment in that it does not "genuinely narrow" the class of death-eligible defendants. Wilcher did not raise this issue at trial, and therefore, is procedurally barred from doing so on appeal. *Walker v. State*, 671 So. 2d 581, 612, (Miss. 1995) (citing *Foster v. State*, 639 So. 2d 1263, 1270); *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987)). Furthermore, even if the issue were not procedurally barred, this Court has repeatedly rejected the argument raised by Wilcher:

The use of the underlying felony . . . as an aggravator during sentencing has been consistently upheld in capital cases. This Court has stated:

The argument is the familiar "stacking" argument that the state can elevate murder to felony murder and then, using the same circumstances can elevate the crime to capital murder with two aggravating circumstances. As pointed out in *Lockett v. State*, 517 So. 2d 1317, 1337 (Miss. 1987), this Court has consistently rejected this argument.

*Minnick v. State*, 551 So. 2d at 96-97. The United States Supreme Court has confirmed that this practice does not render a death sentence unconstitutional. *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). *See also, Ladner v. State*, 584 So. 2d 743, 763 (Miss. 1991).

This issue is without merit.

*Walker*, 671 So. 2d at 612.

### C. The Underlying Felony Aggravator and Proportionality.

¶97. Wilcher's final argument on this point is that the felony murder aggravator is disproportionate within the meaning of the Eighth Amendment. Specifically, Wilcher argues that unintentional felony murder is punishable by death, while premeditated murder, standing alone, is not.

> Our precedents make clear that a State's capital sentencing scheme must ... *genuinely narrow* the class of defendants eligible for the death penalty. When the purpose of a statutory aggravating circumstance is to enable the sentencer to distinguish those who deserve capital punishment from those who do not, the circumstance must provide a principled basis for doing so. *If the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm.*

*Blue v. State*, 674 So. 2d 1184, 1216 (Miss. 1996) (quoting *Arave v. Creech*, 507 U.S. 463, 474 (1993)) (emphasis in original).

¶98. Not every defendant eligible for the death penalty will have committed murder while in the course of robbery or kidnapping or the other statutorily enumerated felonies. *See* Miss. Code Ann. § 97-3-19. Therefore, the felony murder aggravator genuinely narrows the class of defendants eligible for the death penalty. Furthermore, "[t]he legislature has a very great latitude in prescribing and fixing punishment for crime." *Smith v. State*, 419 So. 2d 563, 567 (Miss. 1982), *overruled on other grounds*, *Willie v. State*, 585 So.2d 660, 681 (Miss.1991).

*¶99.* Moreover, the aggravating factor for murder committed during the course of a robbery is constitutional. *See Lowenfield v. Phelps*, 484 U.S. 231 (1988). *See also Lockett v. State*, 614 So.2d 888, 897 (Miss. 1992) ["This Court has previously determined that Mississippi's capital sentencing scheme, as a whole, is constitutional."]. For these reasons, Wilcher's argument fails.

## XIII. WHETHER THE TRIAL COURT ERRED IN SUBMITTING THE "ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL" AGGRAVATING CIRCUMSTANCE?

**¶100.** Instruction S-1A instructed the jury to consider four aggravating circumstances -- one of which was "whether the capital offense was especially heinous, atrocious, or cruel." This instruction was given over the objection of defense counsel. Instruction S-8, which was also given over defense objections, defined "heinous, atrocious, and cruel" as follows:

> The Court instructs the Jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.

> An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of capital murders -- the conscienceless of pitiless crime which is unnecessarily torturous to the victim.

¶101. Wilcher correctly contends that a "heinous, atrocious, or cruel" instruction must be accompanied by an appropriate limiting instruction. *See Clemons v. Mississippi*, 494 U.S. 738 (1990). Wilcher concedes that the language in the second paragraph of the limiting instruction S-8 outlined above was approved in *Jenkins v. State*, 607 So. 2d 1171, 1182 (Miss. 1992). However, Wilcher points out that the first paragraph of this definition was struck down in *Shell v. Mississippi*, 498 U.S. 1 (1990). For this reason, he urges that the trial judge erred in granting these instructions.

¶102. This issue was thoroughly analyzed in *Carr v. State*, 655 So. 2d 824, 851-52 (Miss. 1995); a similar instruction was considered and found to have been proper:

> Viewing this issue on the merits, we find the "especially heinous" aggravator was accompanied by a proper limiting instruction.
>
> The challenged limiting instruction reads:
>
> The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or enjoyment of the suffering of others
>
> In order for you to find in this case the aggravating circumstance that the crime was especially heinous, atrocious, or cruel, you must unanimously find beyond a reasonable doubt that the capital offense was accompanied by such additional acts as to set the crime apart from the norm of capital offenses-- that is, that the crime was conscienceless, pitiless, or unnecessarily torturous to the victim.
>
> Mississippi jurisprudence has been inundated with case law regarding the "especially heinous" aggravator. In *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) , the United States Supreme Court held that the aggravating circumstance of "especially heinous, atrocious, or cruel" was unconstitutionally vague if given without a limiting instruction. *Gilliard v. State*, 614 So.2d 370, 374 (Miss.1992); *See also Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).
>
> The proper instruction defining the especially heinous aggravating circumstance is found in *Coleman v. State*, 378 So.2d 640 (Miss.1979):
>
> What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies--*the conscienceless or pitiless crime which is unnecessarily torturous to the victim.*
>
> *Id.* at 648 (quoting *Spinkellink v. Wainwright*, 578 F.2d 582, 611 (5th Cir.1978) (citation omitted).
>
> Paragraph one of instruction D-4 above, was constitutionally insufficient as a limiting instruction to the especially heinous aggravating factor when given alone. *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). *See also Jenkins v. State*, 607 So.2d 1171,

1181 (Miss.1992). However, paragraph two of sentencing instruction D-4 tracks the language approved in *Coleman*, 378 So.2d at 648, which is set out above. This language was also approved by the United States Supreme Court in *Clemons*, 852 494 U.S. at 751, 110 S.Ct. at 1449, 108 L.Ed.2d at 740.

In *Jenkins*, the Court was faced with a similar situation. The especially heinous limiting instruction given at trial contained three different parts: the insufficient *Shell* instruction, the approved *Coleman* instruction, and a portion that had not yet passed the United States Supreme Court litmus test, although still viable in this Court. This Court held that when read as a whole, the additional *Coleman* instruction properly narrowed the especially heinous aggravating circumstance for the jury's consideration. *Jenkins*, 607 So.2d at 1181-1182. *See also Hansen*, 592 So.2d at 152.

*Carr*, 655 So. 2d at 851-52.

¶103. As in *Carr*, the approved *Coleman* language in paragraph two of instruction S-8 in the case sub judice properly limited the "heinous, atrocious, or cruel" instruction in S-1A. *See Id.* In addition, "there was sufficient evidence in the record to warrant the instruction." *See Id.* The evidence indicated that Wilcher stabbed Noblin thirty-one times because "it felt good." He left her lying in a pool of her own blood. The medical evidence indicated that Noblin gasped and gurgled while blood filled one of her lungs, and that she eventually bled to death some minutes later. For these reasons, Wilcher's contention on this point is without merit.

## XIV. WHETHER THE PROSECUTORS' CLOSING ARGUMENT CONSTITUTED REVERSIBLE ERROR?

¶104. Wilcher argues that three comments made by the prosecutors during closing arguments improperly inflamed the jury. As a general rule, "attorneys are to be given wide latitude in making their closing arguments." *Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988) (citing *Johnson v. State*, 477 So. 2d 196, 209 (Miss. 1985)); *Shook v. State*, 552 So. 2d 841, 851 (Miss. 1989). "Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety." *Ballenger v. State*, 667 So. 2d 1242, 1270 (Miss. 1995) (quoting *Ahmad v. State*, 603 So. 2d 843, 846 (Miss. 1992)); *Davis v. State* 660 So. 2d 1228, 1248 (Miss. 1995).

## A. The "Who is the State" Comments.

¶105. During the State's closing argument, the following transpired:

[BY THE ASSISTANT DISTRICT ATTORNEY]: I remember Monday morning when my friend, [one of the defense attorneys], referred to [the District Attorney] and myself as the government so many times. I've been called worse, I suppose, but just who are we, the government of the State? The people that we represent. We are the people of the State of Mississippi. We represent the people of Scott County, the people of Rankin County. We, the government, are the victims of this crime, the sons, the daughters, the husband, the brothers, the sisters, the grandchildren --

[BY DEFENSE COUNSEL]: If your Honor --

[BY THE ASSISTANT DISTRICT ATTORNEY] -- who will never see --

[BY DEFENSE COUNSEL]: please, I will object to this argument. I believe this has been condemned in the case of Williams v. State.

BY THE COURT: Overruled.

[BY THE ASSISTANT DISTRICT ATTORNEY]: The people who will never see or hear from that loved one again. We are Velma Odell Noblin, who has been cheated out of a future with her family and friends, because killing her felt good.

So, when you hear what the State or the government wants to do with Bobby Glen Wilcher, remind yourself about who we really are, and when you hear their pleas for his life, or when you get into the jury room, and if you think that for one minute life imprisonment is good enough for Bobby Wilcher, or someone tries to convince you that life imprisonment is good enough for Bobby Wilcher, remember who we really are, and what the Defendant did to Mrs. Noblin and her family, and ask yourself this question. It maybe sums up the whole case, in a lot shorter form than is given to you.

Does any hardship that the Defendant has lived through outweigh what he has done in committing two capital murders? Does any hardship that he has lived through outweigh what is contained in these photographs? Is it possible for anyone to drink enough to outweigh what he has done?

If you answer those questions honestly, there is only one possible reasonable verdict in this case, and on behalf of the people we represent, the State of Mississippi asks you to give Bobby Glen Wilcher the death penalty, just like he gave to Velma Odell Noblin.

¶106. The defense responded to this comment in its closing arguments as follows:

[BY DEFENSE COUNSEL]: Now the attorneys for the government, and my friend, [the Assistant District Attorney], says I shouldn't call them a government lawyer. He says he's the State's lawyer, he's the State of Mississippi's lawyer, he is for the people. Folks, I'm one of those people, too. You are one of those people, too. Bobby Wilcher is one of those people too, and he argues that the facts of what happened leave you no choice but to give death.

He is wrong. You have a choice.

¶107. Wilcher argues that identification of the State with the victim is reversible error. In support of his contention, Wilcher cites *Fusilier v. State*, 468 So. 2d 45 (Miss. 1985). In that case, the victim's daughter was allowed to sit within the rail facing the jury slightly behind and to the right of the prosecution. The victim's daughter repeatedly conferred with the District Attorney and displayed emotion throughout the trial. *Id.* at 52-53. This Court held that the presence of the victim's daughter was prejudicial and inflammatory and denied the defendant/appellant a fair trial. *Id.*

¶108. The case at hand can easily be distinguished from *Fuselier*. There is no evidence that members

of the victims' families were present inside the rail at Wilcher's resentencing trial. The question is, given the broad latitude afforded attorneys during closing argument, whether the prosecutor's comments in this case introduced an element of passion, prejudice or any other arbitrary factor into this sentencing hearing. *See* Miss. Code Ann. §99-19-105(3)(a). Considering the context of the statements and the great latitude given attorneys in closing argument, this Court finds that the prosecutor's "who is the State" comments did not interject an arbitrary factor into the proceedings.

## B. The "Send a Message" Comment.

¶109. The following exchange also occurred during the State's closing argument:

> [BY THE DISTRICT ATTORNEY]: Ladies and gentlemen, capital murder with robbery as one of the underlying felonies is perhaps the worst, most heinous, crime a person is capable of committing, because by his actions, that person is saying, "Your money or your property are more important to me than your life, and if I have to kill you to take what belongs to you, I will, or I might take it anyway and kill you just for fun, just for wickedness, or just because it feels good."

> The death penalty will send a message to that kind of person.

> BY [DEFENSE COUNSEL]: If Your Honor, please, I will object to this. This argument has been condemned in <u>Williams vs. State</u>, and we object to it.

> BY THE COURT: Sustained.

> BY [DEFENSE COUNSEL]: We move for a mistrial, Your Honor.

> BY THE COURT: Overruled.

¶110. This Court has cautioned prosecutors against using "send a message" language in closing arguments. ***See Williams v. State***, 522 So. 2d 201, 209 (Miss. 1988). The trial judge properly sustained the defense's objection to this language. Moreover, such language does not require reversal in the case sub judice. ***See Chase v. State***, 645 So. 2d 829, 854 (Miss. 1994); ***Carleton v. State***, 425 So. 2d 1036, 1039 (Miss. 1983). ***See also Hunter v. State***, 684 So. 2d 625, 637 (Miss. 1996).

## C. The "Mad Dog" Comment.

¶111. Defense counsel made the following comment during closing arguments:

> Now, the fact that our society is repulsed by killing is something that I never expect you to just forget when you go back there. We are, as a society, abhorring killing. We drive down the street in a car, and a rabbit or something runs out in front of us. What do you do? You swerve to avoid it. Why? You don't want to kill it, and I submit to you, folks, that in breaking [sic] and swerving to avoid killing an animal, that you consider that Bobby Wilcher is in the road that you are driving down now, and the decision on whether to swerve is yours.

¶112. Thereafter, the following transpired during the District Attorney's rebuttal:

> [BY THE DISTRICT ATTORNEY]: [Defense Counsel] says, "Well, when a rabbit runs in

front of your car, don't you swerve to avoid hitting him?" Yes; but, what has that rabbit done to harm anybody? But, if a mad dog is loose in your town, and innocent people are killed --

BY [DEFENSE COUNSEL]: Now, if Your Honor, please, I will object to his making a comparison of Mr. Wilcher to a mad dog, and we move for a mistrial.

BY THE COURT: Overruled.

BY [THE DISTRICT ATTORNEY]: If a mad dog is loose in your town and innocent people are killed, what do you do then? Bobby Wilcher is no rabbit.

¶113. Wilcher contends that he was improperly vilified by the District Attorney's "mad dog" comment, and cites *Griffin v. State*, 557 So. 2d 542, 552-53 (Miss. 1990). In *Griffin*, the case was reversed because the prosecutor improperly commented on the defendant's failure to testify. *Griffin* , 557 So. 2d at 552-53. Thus, the vilification of the defendant was only one of many reasons for reversal in the *Griffin* case. *See Id.*

¶114. Furthermore, the prosecutorial comment must be considered in context. *Ballenger v. State*, 667 So. 2d 1242, 1270 (Miss. 1995). The defense chose to use imagery to compare Wilcher to a rabbit. An image that hardly fit a person who had already been found guilty of brutally stabbing the victim in this case thirty-one times. The State, in response, used imagery that it obviously found more appropriate. Considering the context in which the "mad dog" comment was made, it was within the latitude granted to counsel during closing arguments. *See Ballenger*, 667 So. 2d at 1269-70 (death sentence affirmed where prosecution compared defendant/appellant to Charles Manson). Wilcher's argument to the contrary is without merit.

## XV. WHETHER THE DEATH SENTENCE IMPOSED IN THIS CASE WAS PROPORTIONATE?

¶115. Miss. Code Ann. § 99-19-105 (Supp. 1996) requires that, before a death sentence can be upheld, this Court must determine whether the sentence imposed was excessive or disproportionate to the penalty imposed in similar cases since *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976). This comparison is made from cases in which the death sentence was imposed and was reviewed on appeal by this Court. In making this individualized comparison, this Court considers the crime and the defendant. *Cabello v. State*, 471 So. 2d 332, 350 (Miss. 1985).

¶116. Having given individualized consideration to the defendant and the crime sub judice, this Court concludes that there is nothing about this defendant or this crime that would make the death penalty excessive or disproportionate in this case. *See Appendix A*; *Blue v. State*, 674 So. 2d 1184, 1234-35 (Miss. 1996) (death sentence proportionate where defendant abused drugs and alcohol at an early age, came from dysfunctional family, and had no positive role models at home); *Foster v. State*, 639 So. 2d 1263, 1304 (Miss. 1994) (death sentence proportionate where young defendant was mentally impaired); *Lanier v. State*, 533 So. 2d 473, 492 (Miss. 1988) (death sentence was proportionate where defendant had been institutionalized twice for alcoholism and drug abuse) *Neal v. State*, 451 So. 2d 743, 761 (Miss. 1984) (death sentence affirmed where defendant had been institutionalized at young age, had learning and family difficulties, and was not loved or supervised at home). *See also Cabello v. State*, 471 So. 2d 332, 350 (Miss. 1985) (death sentence was proportionate where

defendant strangled and robbed victim); ***Evans v. State***, 422 So. 2d 737, 739 (Miss. 1982) (death sentence was proportionate where defendant robbed and shot victim); ***Booker v. State***, 449 So. 2d 209, 222 (Miss. 1984) (death penalty was proportionate where defendant shot and robbed victim). Therefore, the death sentence in this case is neither disproportionate nor excessive.

## CONCLUSION

¶117. The arguments raised by Wilcher in this appeal are without merit. In addition, this Court, pursuant to Miss. Code Ann. § 99-19-105 (Supp. 1996), has reviewed this case to determine whether the sentence imposed here is excessive or disproportionate to the penalty imposed in similar cases decided since ***Jackson v. State***, 337 So. 2d 1242 (Miss. 1976). This Court finds that, considering the crime and the defendant, the death sentence imposed upon this defendant is not excessive or disproportionate. For these reasons, the trial court's judgment and sentence of death by lethal injection is affirmed.

**¶118. CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7) (1972) AND M.R.A.P. 41(a).**

**LEE, C.J., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

### SULLIVAN, PRESIDING JUSTICE, DISSENTING:

¶119. I cannot concur with the majority reasoning in several particulars, and therefore dissent. This dissent also applies to 94-DP-00761 except for the section dealing with prior conviction as an aggravating factor.

### I.

### THE TRIAL COURT ERRED BY REFUSING TO ALLOW CROSS-EXAMINATION OF SHERIFF WARREN ON HIS EXTORTION CONVICTION.

¶120. In ***Crapps v. State***, 221 So.2d 722, 723 (Miss. 1969), this Court stated that the Sixth Amendment to the United States Constitution established the right to confrontation. In ***Hubbard v. State***, 437 So.2d 430, 433-34 (Miss. 1983), this Court stated that the Mississippi Constitution, Article 3, Section 26, grants and guarantees a criminal defendant the right to confront witnesses against him. *See also* ***Stromas v. State***, 618 So.2d 116, 121 (Miss. 1993). The right of confrontation "extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." ***Myers v. State***, 296 So.2d 695, 700 (Miss. 1974).

¶121. The majority is incorrect in holding that the trial court did not abuse its discretion when not admitting Sheriff Warren's conviction for extortion. The trial court did not allow the conviction

because the conviction was in 1989 and the sheriff originally testified in 1982. However, the trial court fails to take into account that the hearing was held in 1994. Therefore, if the sheriff had been able to testify at trial in 1994, then he would have been able to testify to the *prior* 1989 conviction for extortion.

¶122. The sole reason that the trial judge excluded the evidence is found in the transcript of the trial proceedings while the jury was adjourned. It reads in part, "Well gentlemen, we are retrying events that occurred in 1982. The fact that we are here in 1994 rehashing those matters, to me, is of no consequence. It is dictated by the fact that in 1982, the crime occurred. In 1982, there was a trial. In 1982, Sheriff Warren testified." However, the transcript was read in 1994 before a 1994 jury. The jury is directed to give Sheriff Warren's transcribed testimony equal weight as other live testimony. If Sheriff Warren had been able to testify in 1994, he would have been able to testify as to his conviction of extortion in 1989.

¶123. Prior convictions are admissible to impeach a witness on two grounds according to MRE 609(a). According to the requirements of MRE 609(a)(1), Sheriff Warren's conviction was punishable in excess of one year. However, according to MRE 609(a)(1), the trial judge must also determine that the probative value outweighs the prejudicial effect on the "party." Two problems arise. First, the trial judge never weighed the probative value versus the prejudicial effect because the trial judge determined that the extortion conviction was not a *prior* conviction. Therefore, the trial judge failed to follow the second prong of MRE 609(1)(a) by not determining the conviction's probative value versus its prejudicial effect when excluding the conviction as evidence for impeachment purposes. Secondly, MRE 609(a)(1) refers to the "prejudicial effect on a *party*." Since Warren was not a party to the suit but merely a witness, the prejudicial effect on his testimony is irrelevant. In other words, when a defendant or party to a suit (such as Wilcher) testifies, and a prior conviction is sought admissible for impeachment purposes, the court must weigh the probative effect of the prior conviction and its prejudicial effect on the "party." However, a non-party may not be prejudiced. Therefore, the extortion conviction should have been admitted.

¶124. The extortion conviction could have automatically been admitted for impeachment purposes pursuant to MRE 609(a)(2) and not subject to court discretion. *Butler v. State*, 608 So.2d 314 (Miss. 1992). MRE 609(a)(2) does not require the court to weigh the probative value against the prejudicial effect when the prior conviction involves dishonesty or false statements. Under MRE 609(a)(2), the "admission of prior convictions involving dishonesty or false statement is not within the discretion of the court. Such convictions are peculiarly probative of credibility and are always to be admitted." *Butler*, 608 So.2d at 322-24 (*quoting* Comments to MRE 609(a)(2)). The majority failed to determine whether extortion is a dishonest and/or fraudulent crime which should be admitted under MRE 609(a)(2).

¶125. Extortion is a dishonest crime admissible under MRE 609(a)(2). While Mississippi case law fails to address specifically that extortion is a crime of dishonesty, Iowa has done so. The Iowa Supreme Court held that "extortion is clearly an example of dishonesty." *State v. Brodene*, 493 N.W.2d 793, 796-97 (Iowa 1993).

¶126. Therefore, for the previously stated reasons, the trial court erred in excluding Sheriff Warren's conviction of extortion.

## II.

## THE TRIAL COURT ERRED IN EXCLUDING MITIGATING EVIDENCE IN REGARDS TO THE TESTIMONY OF WILCHER'S FAMILY MEMBERS.

¶127. Victim impact statements are irrelevant as to a criminal defendant's guilt or culpability. Therefore, I must agree fully with Justice Stevens's dissent in *Payne v. Tennessee*, 501 U.S. 808, 856 (1991). However, since *Payne* over-ruled *Booth v. Maryland*, 482 U.S. 496 (1987), and *South Carolina v. Gathers*, 490 U.S. 805 (1989), which held that victim impact statements violated a defendant's Eighth Amendment rights, I will not beat a dead horse. However, I cannot agree with the majority that allows victim impact statements but does not allow a defendant's family to testify as to the impact upon them of the defendant's execution. Such a finding creates an unequal playing field. Essentially, a victim impact statement is the same as a defendant's family's testimony about the impact of the defendant's execution. Both are equally irrelevant. However, as the old proverb reads, what is good for the goose is good for the gander. Therefore, if victim impact statements are admissible, then a court must also find a defendant's family's impact testimony admissible as well. Yet, criminal law requires more than an equal playing field. Criminal defendants are entitled to heightened protection in criminal law, such as the Eighth Amendment right to allow all mitigating evidence at the sentencing stage, or as reflected in the rules of evidence; therefore, there should be no doubt that a defendant's family may testify as to the impact of the defendant's death just as the victim's family has done.

¶128. When *Payne* over-ruled *Booth* and *Gathers*, the United States Supreme Court did not state that all victim impact statements are admissible or even should be admitted. The highest Court only stated that the Eighth Amendment does not erect a *per se* bar. *Payne*, 501 U.S. at 827. A victim impact statement must not unduly prejudice the defendant as to render the trial fundamentally unfair. *Payne*, 501 U.S. at 825. *Payne* justified admitting victim impact statements by demanding fairness and equality, "'[J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it narrowed to a filament. We are to keep the balance true.'" *Payne*, at 827 (*quoting Snyder v. Massachusetts*, 291 U.S. 97 (1934)). Thus, the majority in *Payne* harped on the notion that victim impact statements were relevant in the sentencing phase as an act of fairness. *Payne*, at 827. *See also Payne,* at 833 (Scalia., J. concurring) ("[T]he Eighth Amendment permits parity between mitigating and aggravating factors."). Since a victim is not on trial, the victim's character and morality are not on trial. The impact upon a victim's family is not on trial either. What is on trial is the guilt and culpability of the defendant. However, now that victim impact statements are admissible, any similar mitigating evidence should be deemed relevant on the basis of fairness and equal parity.

¶129. While *Payne* justified the use of victim impact statements in the name of fairness, *Payne* did not take away Eighth Amendment rights specifically due an accused. *Payne* reiterated that the Eighth Amendment imposes special limitations when the death penalty is imposed. Of those limitations, "'States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the penalty. In this respect, the State cannot challenge the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant.'" *Payne*, at 824 (*quoting McClesky v. Kemp*, 481 U.S. 279, 305-06 (1987)). Furthermore, mitigating factors have been allowed in an effort to treat defendants as "uniquely individual human beings." *Payne*, at 822;

***Booth***, 482 U.S. at 504; ***Woodson v. North Carolina***, 428 U.S. 280, 304 (1976). Since the law requires the State to treat a defendant as an unique human being, the impact on the defendant's family of defendant's death is relevant; this is even more true in light of the fact that victim impact statements are admissible at the sentencing stage.

¶130. Criminal law was created with the notion of protecting the innocent and punishing the guilty. However, since the State has great power over its constituents, our criminal system affords individuals certain rights and protections. In the words of Justice Stevens:

> The Constitution grants certain rights to the criminal defendant and imposes special limitations on the State designed to protect the individual from overreaching by the disproportionately powerful State. Thus, the State must prove a defendant's guilt beyond a reasonable doubt. *See **In re Winship***, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Rules of evidence are also weighted in the defendant's favor. For example, the prosecution generally cannot introduce evidence of the defendant's character to prove his propensity to commit a crime, but the defendant can introduce such reputation evidence to show his law-abiding nature. See, e.g., Fed.Rule Evid. 404(a).

***Payne***, 501 U.S. at 860 (Stevens, J., dissenting). Reason dictates that since victim impact statements are now deemed relevant, there should be no question that a defendant's family impact statement concerning a defendant's death is relevant, admissible, and protected by the Eighth Amendment.

¶131. The majority relies on three Mississippi cases in determining that a defendant's family testimony about the impact of the possibility of death of the defendant is neither admissible nor relevant. The first Mississippi case, which the later cases rely on as precedent, is ***Mease v. State***, 539 So.2d 1324 (Miss. 1989). ***Mease*** dealt solely with the issue of whether the lesser-included offense of manslaughter should have been included in the jury instruction with capital murder. Specifically, ***Mease*** addressed whether manslaughter should have been included as jury instructions for the murder of a sheriff. The case never addressed nor mentioned family testimony as a mitigating circumstance at the sentencing stage of a capital case. Therefore, ***Mease*** is inapplicable precedent authority.

¶132. In the second case, ***Turner v. State***, 573 So.2d 657 (Miss. 1990), the defendant wanted to introduce testimony of another family and the impact of the death penalty upon that family whose son was executed. The case *sub judice* is entirely different from ***Turner.*** In the case *sub judice*, Wilcher wanted to introduce ***his own family's*** testimony. The last and most recent case is ***Simon v. State***, 1995 WL 49560 (Miss. 1995). In ***Simon***, the trial court refused to permit Simon's family to testify in order to show the impact Simon's death would have on their lives. Thus, ***Simon*** and the case *sub judice* are identical. However, ***Simon*** incorrectly relied on ***Turner*** and ***Mease*** as authority. As previously stated, ***Mease*** never addressed the issue at hand. ***Turner*** did not address whether a defendant's own family could testify. ***Simon*** also ignored ***Payne***. Therefore, the majority is incorrect in finding that this Court has dealt with this issue before.

### III.

### THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD CONSIDER WILCHER'S CONVICTION FOR THE MURDER OF THE SECOND

**VICTIM AS AN AGGRAVATING CIRCUMSTANCE.**

¶133. The majority incorrectly concluded that Wilcher's second and later conviction in Wilcher (Rankin County) 94-DP-00761 was properly considered as an aggravating factor in Wilcher (Harrison County) 94-DP-00760. The majority fails to recognize the long settled premise that a criminal conviction is not final until sentencing. While "conviction" is often used in reference to the ascertainment of guilt, a conviction, as a final judgement, includes the sentence. In 24 CJS *Criminal Law* § 1458, "conviction", in its technical legal sense, "means the final consummation of the prosecution against accused including the judgement or sentence rendered pursuant to a verdict, confession, or plea of guilty." Mississippi reaffirmed this concept of "conviction" as a final judgement in *Lang v. State*, 238 Miss. 677, 119 So.2d 608 (1960). This Court stated that a conviction was not a final judgement until the defendant is properly sentenced. *Lang*, 238 Miss. at 680. Thus, where Lang was convicted for rape but not sentenced, this Court did not have jurisdiction to hear the appeal. *Lang*, at 680; *Lemly v. State*, 69 Miss. 628, 12 So. 559 (1892). Therefore, a conviction is not a final judgement until a defendant is properly sentenced. *See also Ex Parte White*, 130 P.2d 103, 104 (Okla. 1942)("conviction" means a final judgement of the court based upon a plea or a verdict of guilt). Therefore, the majority was incorrect in finding no error when the trial court allowed the 94-00761 (Rankin County) conviction as an aggravating factor in the 94-00760 (Harrison County) case.

**IV.**

**THE PROSECUTOR'S CLOSING ARGUMENT CONSTITUTED REVERSIBLE ERROR.**

¶134. No doubt, attorneys are given latitude in their closing arguments. However, the prosecution went beyond reasonable limits on closing argument. In *Williams v. State*, 522 So.2d 201, 209 (Miss. 1988), this Court addressed prosecutorial comments made to the jury concerning "who is the state" and "send a message" as made in the case *sub judice*. This Court stated:

> . . . [W]e consider the argument improper. The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.

*Williams*, at 209. Even though *Williams* did not reverse the conviction on the assignment of error concerning the improper prosecution closing argument, this Court warned prosecutors against making such arguments. If this Court continues to allow improper remarks such as "send a message," and only note the Court's distaste of such remarks, then prosecutors will continue making improper comments as is the case here. Therefore, this Court must reverse on grounds of improper prosecutorial comments and *"send a message"* to the prosecutors that this Court will not approve and affirm such egregious conduct.

## CONCLUSION

¶135. In light of the foregoing errors by the trial court in the case *sub judice*, Wilcher was denied a fair sentencing trial and protection of his rights. I cannot agree with the majority's conclusion that these errors were non-existent. Therefore, I must respectfully dissent and would reverse.

**McRAE, J., JOINS THIS OPINION.**

**BANKS, JUSTICE, DISSENTING:**

¶136. I am compelled to write separately for two reasons. First, the majority for the first time approves the use of victim impact testimony during the sentencing phase. In my view this is neither wise nor warranted. I also take issue with the majority's treatment of the evidentiary issue of the sheriff's conviction. While I agree with much that is said by Justice Sullivan in dissent, I cannot agree fully with his ultimate conclusions.

I.

¶137. In the first place, the admissibility *vel non* of victim impact evidence is not raised by Wilcher. While he did object to this testimony when offered, he complains here that evidence of the impact of a death penalty on *his family* should also have been admitted. It is unnecessary then that we reach the question of whether the victim impact evidence that was admitted here was actually admissible.

¶138. If we are to address this issue, I, like Justice Sullivan, agree with the view expressed by Justice Stevens in dissent in ***Payne v. Tennessee,*** 501 U. S. 808 (1991). That view is consistent with what we have recently held in ***Mack v. State***, 650 So. 2d 1289, 1324-5 (Miss. 1994) (prosecutor's use of victim characteristic evidence that he played dominoes, lived alone, and was a kind and well-loved man had no relevance at all other than to inflame the jury's passions and violated this Court's holdings notwithstanding the lack of a federal constitutional prohibition). *See also* ***Wiley v. State***, 484 So. 2d 339, 348 (Miss. 1986) (prosecutor cannot enter proof of the good character of the decedent as part of its main case before the character of the deceased has been attacked). The majority should at least acknowledge that this Court has not before today approved victim impact evidence as relevant in and of itself in our statutory death sentencing scheme.

¶139. In ***Hansen v. State***, 592 So. 2d 114, 146 (Miss. 1991), the defendant complained of the fact that the jury was informed of the fact that the victim was a state trooper. That information was, of course, relevant to the capital offense charged, the murder of a police officer in the performance of his duties. It was not admitted as victim characteristic evidence at the sentencing phase but rather was an integral part of the proof necessary to establish the capital offense. Miss. Code Ann. § 97-3-19(2) (Supp. 1990). While this Court, somewhat gratuitously, discussed the constitutional limitations on our statutory law and concluded that ***Payne*** obviated any remote constitutional concern with the statute, it in no way approved the use of victim characteristic or victim impact evidence as independently relevant to sentence. ***Hansen***, 592 So. 2d at 147.

¶140. Similarly, the majority's statement that ***Jenkins v. State***, 607 So. 2d 1171 (Miss. 1992), held that the characteristics of the victim are ipso facto relevant to the crime charged is simply wrong. What ***Jenkins*** held was that the particular characteristics of the victim put in evidence were relevant *in that case* to the defendant's claim that he was having a relationship with the victim. 607 So. 2d at 1183. ***Jenkins*** went no further than ***Hansen***. That is, where evidence of a characteristic of the victim is independently relevant to some issue of guilt, it is admissible. Neither case dealt with the kind of victim impact testimony that we have here and neither case suggested that victim characteristic evidence is independently admissible.

¶141. Until today, this Court has wisely limited evidence to be offered by the State in the sentencing phase to evidence regarding the nature of the criminal offense and that regarding the statutorily prescribed aggravating factors that might support a death sentence. It is well-settled law that the State is prohibited from offering any other evidence that might be broadly considered relevant to sentencing if it is not related to the proof of those statutory aggravators, the ***Enmund*** factors, or bona fide rebuttal to any mitigating evidence that has been adduced. *See* ***Mack v. State***, 650 So. 2d at 1324-5 (addressing victim character and impact evidence as irrelevant to any of the permitted aggravating circumstances); ***Balfour v. State***, 598 So. 2d 731, 747-8 (Miss. 1992); ***Coleman v. State***, 378 So. 2d 640, 648 (Miss. 1979).

¶142. Victim impact evidence does not tend to prove any aggravating circumstance that is presently allowed in our statute. While it has been held permissible by the United States Supreme Court in that the Eighth Amendment does not preclude its use, our statute nevertheless does not expressly permit its use and we do not allow the State in capital cases to put on evidence not prescribed by the statute. Justice O'Connor, writing for three of the six-justice majority in ***Payne***, was careful to note that the court did not hold "that victim impact evidence must be admitted, or even that it should be admitted." ***Payne***, 501 U. S. at 831. She further suggested that in a particular case a line may be crossed rendering such evidence offensive to the Due Process Clause of the Fourteenth Amendment. ***Id.***

¶143. I do not suggest that the line has been crossed on today's record. The victim impact testimony here involved was not as extensive as that allowed in ***Payne***. I do suggest, however, that we should proceed with care in expressing approval of this kind of extra-statutory aggravating evidence, for it is fraught with danger. Assuming that this Court has now decided that it will permit this evidence despite the fact that it does not relate to a statutorily prescribed aggravating factor, we should go further and limit victim impact evidence to whether the victim left dependants, parents or siblings and a "quick glimpse" into the victim's life. ***Id.*** at 830 (O'Connor, J., concurring).

¶144. All of the preceding discussion notwithstanding, the precise issue that has presented to this Court is whether the trial court erred in excluding evidence offered by the *defendant* as to the impact that his execution would have on his family. Wilcher argued that such e vidence was only fair in light of the fact that the State had been allowed to introduce evidence of the impact of the victims' deaths. I concur with the analysis of this issue that is set forth by Justice Sullivan. I wish only to highlight the illogic in the majority analysis. In ***Turner v. State***, 573 So. 2d 1335 (Miss. 1990), we relied upon ***Booth v. Maryland***, 482 U.S. 496 (1987) (holding victim impact evidence irrelevant and inadmissibly unconstitutional), for our pronouncement that evidence of the impact on of a defendant's execution on his family was irrelevant and inadmissible. Today, however, we rely upon ***Payne***, which overruled ***Booth***, to *permit* the State to introduce victim impact evidence while simultaneously utilizing ***Turner***

(and its outlawed rationale) to *deny* the comparable opportunity to the defendant to present his impact evidence.

¶145. Nevertheless, my review of the record compels me to concur in the result reached by the majority as to this issue. Wilcher was not denied the opportunity to elicit testimony concerning the impact of the imposition of the death penalty on his family. He was denied the opportunity to have family members express an opinion whether he should live or die. As the majority points out, ample impact testimony was given. What was precluded was the witnesses' ultimate conclusion as to which sentence they preferred. I see no reason why an expression of opinion by a witness as to this ultimate conclusion to be reached by the jury should be permitted, whether it is the victims' families' wish for death or the defendant's family's wish for life. In this case, no family member of either the victim or Mr. Wilcher was permitted to make such a plea to the jury.

¶146. In sum, the majority says too much about this issue without proper briefing and argument, and I disagree strongly with the content of that excess.

II.

¶147. I also disagree strongly with the suggestion that it was not error to exclude the fact that Sheriff Warren, who testified to a statement given him by Wilcher, had been convicted of extortion. The conviction had been proffered to impeach his testimony that Wilcher had confessed to the murders and his intent to rob the victims. Since Warren was deceased at the time of Wilcher's last trial, his testimony in the first trial was read to the jury in the second trial.

¶148. I agree with the majority to the point that it correctly notes the ability to impeach a witness whose testimony is offered in a form other than as a live witness in the usual manner prescribed for impeachment. Thus prior convictions are available under Rule 609(a). The majority concludes, however, that because the conviction occurred some seven years after the testimony was offered, its probative value was somewhat attenuated. In the apparent exercise of the weighing process which the trial court wholly failed to engage, the majority concludes that this diminution of probative value is sufficient to justify the exercise of discretion to exclude the evidence.

¶149. As Justice Sullivan notes, the trial court did not weigh the probative value but rather precluded the evidence on the mistaken notion that the conviction must have occurred before the testimony was recorded in order for the impeachment material to be admitted. *See, e.g. Turner v. State,* 573 So. 2d 1335, 1339 (Miss. 1990) (noting that circuit court erred in refusing to allow defendant to impeach an inculpatory hearsay statement admitted at his trial with the declarant's forgery conviction that occurred after the statement had been given); *see also United States v. Bell*, 44 M.J. 403, 407 (C.M.A. 1996) (rejecting argument that hearsay testimony originally given at a prior trial can only be impeached in a subsequent trial by evidence that is available and admissible at the time of the former testimony).

¶150. That said, I do not agree with Justice Sullivan, however, that this conviction was of the type made admissible under Rule 609(a)(2). Extortion is no more a *crimen falsi* than robbery. ***See Notes of Conference Committee, 1990 Amendment, Federal Rule of Evidence 609*** (following extensive debate in Congress, *crimen falsi* is not intended to include crimes such as bank robbery). It is my view that it was instead incumbent upon the trial court to then have conducted the weighing analysis

that is appropriate for all impeachment evidence of criminal convictions. Because the trial court did not weigh the evidence and because it precluded it for an erroneous reason, its ruling was error. If we are to weigh the evidence, as the majority appears to do, I find that the balance should be struck in favor of its admission.

¶151. First, the weighing process under 609(a) considers the probative value of the proffered testimony against any resulting prejudicial effect *on a party*. *See* **M.R.E. 609(a)**(" . . . the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party"); *see also* **Comment, M.R.E. 609(a)** ("The Federal standard defines 'prejudicial effect' as being that which may injure the defendant in a criminal case. Mississippi Rule 609(a)(1) recognizes that impeachment occurs in civil as well as criminal cases and accordingly defines "prejudicial effect" in broader terms, i.e., as affecting 'a party'"); **Tillman v. State**, 606 So. 2d 1103, 1108 (Miss. 1992) (Banks, J., concurring in part, dissenting in part).

¶152. Needless to say the sheriff, who was the witness in this case to be impeached, was not a party. Thus, the Section 609(a) weighing process could only result in the admissibility of the impeachment, since its admission would work no prejudicial effect at all on either party.

¶153. The remaining weighing process as regards the admissibility of this testimony is that provided in Rule 403. There the burden of showing prejudice is upon the objector. The circumstances in this weighing are identical, however, to those in the 609(a) weighing, and *a fortiori* should have resulted in the admission of the impeachment evidence. The fact is that the sheriff was testifying to a statement given and the circumstances surrounding the giving of the statement. His testimony provided the only evidence of Wilcher's intent to rob his victims, and was contradicted by other statements that did not reveal any intent to commit robbery. He came to the stand clothed with the authority of the state and an aura of credibility. In light of those circumstances, the impeachment evidence of this sort takes on even more weight.

¶154. The question remains whether the error should compel reversal. The witness gave testimony concerning Wilcher's statements about the crime. The fact is, however, that this witness's testimony is the only admission that Wilcher's motive in committing the murders was robbery. None of Wilcher's many other statements supported the conclusions that the murder occurred while he was engaged in the crime of robbery. They all indicated that he was engaged in a drunken lark which turned terribly tragic. The distinction would be of no concern were it not for the fact that an aggravating circumstance charged and found by the jury was that the murder was committed during a robbery. The jury declined to find that Wilcher had committed a kidnaping. Thus, the credibility of the only witness reporting the statement that robbery was Wilcher's plan is a crucial issue, and he was entitled to present his sentencing jury with all of the evidence that was available that was relevant to that fact, including the impeachment of Sheriff Warren's testimony. Indeed, any defendant is free to raise at sentencing any residual doubt of facts that have been litigated in a guilt phase. **Hansen v. State**, 592 So. 2d at 151. Reluctantly, I therefore must conclude that the trial court's refusal of Wilcher's attempt to do so compels reversal.

¶155. For the foregoing reasons, I therefore dissent from the result reached by the majority on this issue.

**SULLIVAN, P.J., JOINS THIS OPINION.**

## APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Simon v. State*, --- So. 2d ---, (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

**Shell v. State**, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi,* 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State*, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d 165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi*, 494 U.S. 1075 (1990) vacating and remanding *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

**DEATH CASES AFFIRMED BY THIS COURT**

**(continued)**

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE

## AND SENTENCE PHASE

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

## DEATH CASES REVERSED AS TO GUILT PHASE

### AND SENTENCE PHASE

### (continued)

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

## DEATH CASES REVERSED

## AS TO PUNISHMENT AND REMANDED

### FOR RESENTENCING TO LIFE IMPRISONMENT

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO

# PUNISHMENT AND REMANDED FOR A NEW TRIAL

# <u>ON SENTENCING PHASE ONLY</u>

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

**\*Shell v. State**, 554 So. 2d 887 (Miss. 1989), **Shell v. Mississippi**, 498 U.S. 1 (1990) reversing, in part, and remanding, **Shell v. State** 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

\***Pinkney v. State**, 538 So. 2d 329 (Miss. 1989), **Pinkney v. Mississippi,** 494 U.S. 1075 (1990) vacating and remanding, **Pinkney v. State,** 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

**\*Clemons v. State**, 535 So. 2d 1354 (Miss. 1988), **Clemons v. Mississippi**, 494 U.S. 738 (1990) vacating and remanding, **Clemons v. State**, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

**\*Jones v. State**, 517 So. 2d 1295 (Miss. 1987), **Jones v. Mississippi,** 487 U.S. 1230 (1988) vacating and remanding, **Jones v. State**, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (Miss. 1996)

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State*, 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).


\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.



1. M.R.E. 609 (a) provides that:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

The other subsections of the rule deal with the time limit on introducing certain convictions, the effect of a pardon, etc., juvenile adjudications, and the pendency of an appeal. See M.R.E. 609 (b) - (e).

2. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3. The sentencing statute in effect at that time provided that a capital murder sentencing jury could sentence the defendant to life or death. That statute has subsequently been amended to provide that a sentencing jury may consider life, life without parole, or death. *See* Miss. Code Ann. § 97-3-19, as amended in July, 1994.

4. Indeed, Wilcher tried to introduce pictures of the maximum security unit at Parchman to demonstrate how harsh the punishment of life imprisonment would be for him. The defense argued that Wilcher would be confined to maximum security, if the jury should sentence him to life imprisonment.